AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
| v. | ) |
|  | ) Case No. 20-6371-SNOW |
| KIARA NUNEZ and | ) |
| ALEXANDRA RAMIREZ, | ) |
|  | ) |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates of  October 2019 through January 2020  in the counties of  Broward and Palm Beach  in the  Southern  District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1591(a)(1) and (b)(2), and 2. | Sex Trafficking of a Minor (two counts) |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jason S. Carter, Task Force Officer, FBI
*Printed name and title*

Sworn to and subscribed before me telephonically this 20th day of August, 2020.

_____
*Judge's signature*

City and state:  Fort Lauderdale, Florida    Lurana S. Snow, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jason S. Carter, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I am a sworn law enforcement officer with the City of Coral Springs Police Department currently assigned to the Special Victims Unit with a primary assignment as a Task Force Officer ("TFO") with the Federal Bureau of Investigations ("FBI"), United States Department of Justice ("DOJ"), Broward County Human Trafficking Task Force. I have been a sworn law enforcement officer with City of Coral Springs Police Department since 2011. I am a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct, execute and serve search warrants, and make arrests for offenses enumerated in Title 18 of the United States Code, and for offenses against the United States, including crimes related to human trafficking, child pornography, and the sexual exploitation of children.

2.  I have participated in investigations of persons suspected of violating federal child pornography laws and human trafficking, including Title 18, United States Code, Sections 2251, 2252, 2252A, and 1591. These investigations have included the use of surveillance techniques, the interviewing of subjects and witnesses, and the planning and execution of arrest, search, and seizure warrants. During these investigations, I have reviewed thousands of still images and videos, electronic media including computers, digital cameras, and wireless telephones, and have discussed and reviewed these materials with other law enforcement officers. I have also participated in training programs for the investigation and enforcement of federal child pornography and human trafficking laws relating to the use of computers for receiving, transmitting, and storing this content.

3. This Affidavit is submitted in support of a criminal complaint charging **Kiara Nunez** (hereinafter "NUNEZ") and **Alexandra Ramirez** (hereinafter "RAMIREZ") with two counts of sex trafficking of a minor, in violation of Title 18, United States Code, Section 1591(a)(1) and (b)(2), and 2. As explained below, there is probable cause to believe that, from in or around October 2019 through on or about January 29, 2020, in the Southern District of Florida, NUNEZ and RAMIREZ did knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, obtain, advertise, maintain, and solicit by any means a person, that is, the Minor Victims, knowing and in reckless disregard of the fact that the Minor Victims had not attained the age of eighteen years and would be caused to engage in a commercial sex act.

4. This Affidavit is based on my personal investigation and investigation by others, including federal and local law enforcement officials whom I know to be reliable and trustworthy. The facts contained herein have been obtained by interviewing witnesses and examining documents obtained in the course of the investigation as well as through other means. This Affidavit does not include every fact known to me about this investigation, but rather only those facts sufficient to establish probable cause.

## PROBABLE CAUSE

5. The investigation, as described in detail below, has revealed that NUNEZ and RAMIREZ trafficked two 15-year-old females ("Minor Victim 1" and "Minor Victim 2") (collectively, the "Minor Victims") for commercial sex, from in or around October 2019 through on or about January 29, 2020, in Broward and Palm Beach Counties.

6. On or about January 29, 2020, law enforcement recovered a 15-year-old female ("Minor Victim 1") from a hotel in Fort Lauderdale (the "Hotel") during a human trafficking undercover operation. During the operation, on that date, law enforcement identified an online

advertisement for the Fort Lauderdale area that advertised sex in exchange for money and contained nude images of young females, later identified as the Minor Victims. The advertisement was located on a website that is often used to advertise or otherwise promote prostitution (the "Website").

7.      A law enforcement officer working in an undercover capacity ("UC") contacted the telephone number listed in the online advertisement and spoke with a female, later determined to be NUNEZ. During the telephone conversation, NUNEZ negotiated a deal where both she and another female, later determined to be Minor Victim 1, would engage in a "two girl special" in exchange for $250. Based on my training and experience, a "two girl special" is a common reference in prostitution for an individual to engage in sexual contact with two women at the same time in exchange for money or other thing of value. The UC and NUNEZ agreed to meet at the Hotel on January 29, 2020.

8.      On that date, at approximately 9:12 p.m., NUNEZ arrived at the Hotel with Minor Victim 1 and knocked on the agreed upon hotel room. NUNEZ and Minor Victim 1 were greeted by the UC and entered the room. Once inside the room, Minor Victim 1 walked into the bathroom while NUNEZ confirmed the sexual activity to be performed with the UC for $250. NUNEZ then provided the UC with a condom that she brought.

9.      While waiting for Minor Victim 1 to come out of the bathroom, NUNEZ informed the UC that Minor Victim 1 is "new" and "gets nervous." NUNEZ informed the UC that she travels with her best friend who has taught her "the game." NUNEZ advised the UC that she has another girl who she sometimes brings to "dates" such as this, and her best friend has other girls. NUNEZ showed the UC photos and a video of other girls in provocative and undressed poses and stated

that she and her best friend "do money." NUNEZ also told the UC that she cleans the girls up. The UC then asked if Minor Victim 1 worked for NUNEZ, to which NUNEZ responded affirmatively.

10. When Minor Victim 1 exited the bathroom, law enforcement officers entered the hotel room and recovered Minor Victim 1. She was identified as a 15-year-old female, who was reported missing to law enforcement by her family on or about January 18, 2020.

11. Further investigation revealed that one of the females depicted in the provocative nude images and video that NUNEZ showed the UC was Minor Victim 2, who was reported missing to law enforcement on or about November 18, 2019.

12. On or about January 29, 2020, NUNEZ gave law enforcement consent to search her cell phone. Although not exhaustive, a forensic examination of NUNEZ's phone revealed the following evidence related to the offenses under investigation:

    a. Communications between NUNEZ and the Minor Victims, wherein NUNEZ provided instructions for engaging in commercial sex acts, including details of the sex acts to be performed, prices, location, and method of transportation;

    b. Communications between NUNEZ and a phone number that law enforcement believes belongs to RAMIREZ.[1] For example, on or about December 19, 2019, in a text message conversation, NUNEZ and RAMIREZ discussed "ugly pics" taken of Minor Victim 2 that NUNEZ and RAMIREZ took while they were in Palm Beach. RAMIREZ then sent three nude photos of Minor Victim 2 to NUNEZ via text message; and

---

[1] The phone number that law enforcement believes belongs to RAMIREZ is saved in NUNEZ's phone under RAMIREZ's first name. Additionally, several "selfie" type images of RAMIREZ were sent to NUNEZ's cell phone from this contact.

    c. Communications between NUNEZ and various individuals who responded to the online advertisement for commercial sex acts, during which NUNEZ used photos of the Minor Victims while negotiating prices for requested sex acts. In one particular conversation, on or about January 26, 2020, NUNEZ sent photos of the Minor Victims to an individual, who responded, "Ima tear that ass up sexy !!! And how old is your home girl," referring to Minor Victim 1. NUNEZ stated "she about to turn 18 in April but 17 at the moment."

    A. MINOR VICTIM 1

  13. On or about January 29, 2020, during her initial interview with law enforcement, Minor Victim 1 reported that she had been trafficked by a male that she had met at the beach around October 2019. Minor Victim 1 stated that the male advertised her for sex on the Website and forced her to engage in commercial sex acts at hotels and Airbnbs throughout Broward County. Minor Victim 1 further stated that NUNEZ assisted the male by transporting Minor Victim 1 to meet with individuals to engage in commercial sex acts and collected the money that Minor Victim 1 made from sex acts.

  14. During a follow-up interview with Minor Victim 1, on or about February 5, 2020, Minor Victim 1 stated that she had falsely identified her "pimp" during her initial interview. Minor Victim 1 explained that NUNEZ instructed her to provide the male's name to law enforcement should they ever be caught. Minor Victim 1 was aware that NUNEZ was being interviewed by law enforcement in a separate room and therefore, out of fear, lied to law enforcement. Minor Victim 1 further stated that everything that she told law enforcement during her initial interview about the male was really about NUNEZ. NUNEZ threatened the life of Minor Victim 1 and her family if she ever told anyone about NUNEZ and RAMIREZ.

15. Minor Victim 1 advised that NUNEZ learned "the game," or how to be a pimp, from RAMIREZ. Minor Victim 1 stated that both NUNEZ and RAMIREZ forced her and Minor Victim 2 to pose in sexually explicit positions as they took photos to post in online advertisements on multiple websites for commercial sex acts.

16. Minor Victim 1 advised that NUNEZ and RAMIREZ rented several hotel rooms and Airbnbs throughout Broward County, and an Airbnb in Lake Worth, for Minor Victim 1 and Minor Victim 2 to engage in commercial sex acts.

17. Minor Victim 1 stated that NUNEZ also ordered vehicles through Lyft or Uber, if NUNEZ did not have access to a vehicle, to transport Minor Victim 1 and Minor Victim 2 to meet with individuals to engage in commercial sex acts.

18. Minor Victim 1 was shown photos from the online escort advertisements that had been posted on the Website and confirmed that she was one of the females featured in the advertisements. Minor Victim 1 further stated that NUNEZ posted the online escort advertisements on the Website.

### B. MINOR VICTIM 2

19. Contact was made with Minor Victim 2 on both February 12, 2020 and July 8, 2020. During interviews with Minor Victim 2, she confirmed the incident at the Airbnb in Lake Worth that Minor Victim 1 discussed with law enforcement. Minor Victim 2 stated that NUNEZ and RAMIREZ drove both girls to an unknown location in Lake Worth, in Palm Beach County, for the sole purpose of "making money" engaging in commercial sex acts. Minor Victim 2 advised that they only had one "date" show up and NUNEZ and RAMIREZ "got mad" that they were not making money. NUNEZ and RAMIREZ then decided to take better nude photos of Minor Victim 2 to post in the online advertisement.

20. Minor Victim 2 advised that she told NUNEZ and RAMIREZ that she did not want to have nude photos taken, however, NUNEZ and RAMIREZ told Minor Victim 2 that if she did not pose naked, in the way they instructed her to, she had to "get the fuck out of the house." Fearing being left in an area she was unfamiliar with, without transportation or money, Minor Victim 2 decided to comply and posed nude as instructed by NUNEZ and RAMIREZ.

21. Minor Victim 2 informed law enforcement that RAMIREZ took the photos and edited them, while NUNEZ posted them online. Both NUNEZ and RAMIREZ eventually removed the photos of Minor Victim 2 from the online advertisement because several customers were complaining that, "the girl looks scared." Minor Victim 2 advised that she was embarrassed that she was being forced to take nude photos and purposely tried to look afraid to possibly get help from anyone who saw them.

22. Minor Victim 2 also advised that NUNEZ provided condoms and collected the money. NUNEZ set the prices of each commercial sex act depending on whether the commercial sex act would be a "quick visit," a half hour, an hour, or a "2 girl special." According to Minor Victim 2, in the beginning, NUNEZ would only take 50% of the customer's money but then began taking a larger percentage. NUNEZ would also share the money with RAMIREZ.

23. Minor Victim 2 discussed that during these acts, Minor Victim 1 did not like sexual intercourse and would only perform oral sex, which made NUNEZ mad. As a result, RAMIREZ provided Minor Victim 1 with pills and told Minor Victim 1 to take them so they would help her "feel good" when having sex. Minor Victim 2 noted that Minor Victim 1 complied and would take the pills. NUNEZ and RAMIREZ also attempted to make Minor Victim 2 take the pills, but she was too afraid after seeing how they made Minor Victim 1 act.

24. Minor Victim 2 witnessed RAMIREZ pointed a BB gun at Minor Victim 1 during an argument over being forced to perform sex acts. NUNEZ would tell them, "you're on my time" and "if you're not making money what the fuck good are you?" NUNEZ threatened she would leave both girls deserted in unknown locations if they did not work for her.

25. Minor Victim 2 identified herself in an online escort advertisement that had been posted on the Website and stated that NUNEZ posted the advertisements.

26. The Minor Victims, during their separate interviews, reported that RAMIREZ "dressed them up" and took them to the Las Olas area of Fort Lauderdale. RAMIREZ instructed them on how to approach and solicit men. RAMIREZ told them to focus on men who appeared to be "drunk," to whisper in their ear while touching them gently. RAMIREZ told them to offer a "date" and if they were not willing to pay the price to move on to the next "drunk" guy. NUNEZ and RAMIREZ realized they were not making money doing it this way, so NUNEZ continued to post online advertisements and arrange meetings with individuals for commercial sex acts.

27. Minor Victim 2 further stated that NUNEZ and RAMIREZ would take turns paying for the Airbnbs that were used for the "dates." Specifically, NUNEZ and RAMIREZ would find Airbnbs with multiple rooms, using one room specifically for the performance of the sexual acts.

28. Subpoena returns from Airbnb confirm that RAMIREZ booked approximately six Airbnbs in the South Florida region during the month of October 2019. NUNEZ booked approximately five Airbnbs in the South Florida region during the month of November 2019.

## CONCLUSION

29. Based on the forgoing, I respectfully submit that there is probable cause to support a criminal complaint charging **Kiara Nunez** (hereinafter "NUNEZ") and **Alexandra Ramirez**

8

(hereinafter "RAMIREZ") with two counts of sex trafficking of a minor, in violation of Title 18, United States Code, Section 1591(a)(1) and (b)(2), and 2.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Respectfully submitted,

_____
Jason S. Carter, Task Force Officer
Federal Bureau of Investigation (FBI)

Sworn to and subscribed before me telephonically
this __20th__ day of August, 2020.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE